TOMPKINS vs. HORTON and others.

1. The title of a purchaser at a sheriff's sale under an execution, issued upon a judgment recovered under a mechanics' lien, general as against the owner and special as against the lands, is paramount to all encumbrances put upon the property after the commencement of the building.

2. A mortgagee is not an "owner" within the meaning of the mechanics' lien law, and is not entitled to notice of a suit upon a lien claim. The owner of the legal estate is alone to be made a party.

On final hearing.

*Mr. John Linn,* for complainant.

*Mr. J. Dixon,* for defendant, Gordon Farmer.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage for $22,300 and interest, given by "The Building and Improvement Association of Hudson County," to the complainant, dated June 1st, 1870, and recorded on the 9th of that month, on premises known as the Magnolia Hotel property at Toms' river, in Ocean county. On the 20th of July, 1870, the Association gave to John G. Trusdell and Morris K. Crane, a mortgage, now owned by the former, for $13,000 and interest, upon the same, with other property. This mortgage was recorded on the 20th of July, 1870. On the 1st of September, 1870, the Association conveyed the premises described in the complainant's mortgage, in fee simple, to Morris K. Crane. The deed, however, was not recorded until the 26th of October, 1870. The Association acquired the premises in fee simple, by deed from John B. Horton and wife, dated April 11th, 1870, recorded on the 6th of May, following. In 1870, the Association built a building for a hotel on the premises. It was begun before May, and finished about the following July.

Certain lien claims were filed under the mechanics' lien law, for work and materials done and furnished for this building. Some of these claims were filed on the 30th of September, 1870, others on the 4th of October in that year, and others on the 28th of the last mentioned month, the 23d of November following, the 7th, 23d and 24th of January, and the 22d of February and the 8th of June, 1871. Those filed on the 30th of September and 4th of October, 1870, were filed against the Association only, as builder and owner. The deed to Crane had not then been recorded. The others were filed against the Association as builder, and Crane as owner. Judgments, general as against the Association and special as to the premises, were duly obtained on these liens, and the sheriff of Ocean county sold the premises under executions on those judgments, to John B. Horton, on the 30th of August, 1871, for $27,000. Horton, on the same day, mortgaged the premises to Gordon Farmer, trustee, to secure the payment of about $14,000, with interest.

The bill states the above mortgages and judgments, and other judgments. It does not refer to the character of the judgments upon the lien claims, nor to the alleged effect under the lien law, of the sale under the writs of *fieri facias* issued thereon, but after stating that the property was sold by the sheriff of Ocean to Horton, under those writs, it alleges that the estate of Morris K. Crane in the land, was thereby conveyed, and charges that the conveyance by the sheriff, under and by virtue of that sale, was made subsequent to and with full notice of the complainant's mortgage. It makes a like charge in reference to the mortgage to Farmer. The bill prays, in the usual way, foreclosure and sale, but for no other special relief.

Gordon Farmer, in his answer, insists that the deed to Horton passed a title in fee simple, free from the encumbrance of the complainant's mortgage and that of Trusdell, and further insists, that by the mortgage given by Horton to him, the title of the latter as mortgagee under a mortgage given to him by the Association, on the premises described in

the complainant's mortgage, to secure the payment of $25,000, of which $10,000 was for purchase money of the land, and $15,000 for money advanced for erecting the building, passed to Farmer. This mortgage is dated April 11th, 1870, and was recorded on the 13th of the same month. Trusdell, by his answer, alleges that before the conveyance to Crane, the latter assigned to him, verbally, his interest in the mortgage from the Association to them, and he claims that, therefore, the merger set up in the bill, of Crane's title to the mortgage by reason of the conveyance to him, did not take place.

The questions presented on the argument of this cause are, whether the sale to John B. Horton, under the lien claims, passed the title to the land free of the encumbrance of the mortgages which were executed and recorded after the commencement of the building; whether the interest of John B. Horton, under the mortgage given to him by the Building and Improvement Association of Hudson county, passed by his mortgage to Gordon Farmer, and whether the interest of Morris K. Crane in the mortgage given to John G. Trusdell and him merged, on the conveyance of the premises by the Association to him.

The evidence shows, and it was assumed and admitted on the hearing, that the building was commenced prior to May, 1870. It is admitted that notice was given to the Association and Crane, as land owners, according to law, and no question is raised as to the regularity of the lien proceedings, or the judgments or sales thereunder. It appears, indeed, that as to some of the demands, the lien claims were filed against the Association as owner, after the sale to Crane, and it also appears that at that time, the deed from the Association to Crane was not recorded. But all the other claims were filed against the Association as builder, and Crane as owner. The sale by the sheriff, was under the executions issued on all these judgments. The principal question to be decided is, whether the title thus conveyed is good against the mortgage of the complainant and that of Trusdell. The eleventh section of the original act of the mechanics' lien law,

(*Nix. Dig.* 574,) declares that the deed shall convey to the purchaser the building free from any former encumbrance on the lands, and shall convey the estate in the lands which the owner had at or at any time after the commencement of the building, within one year before the filing of the claim, subject to all prior encumbrances, and free from all encumbrances or estates created by or obtained against such owner afterwards, and from all estates and encumbrances created by deed or mortgage made by such owner or any claiming under him, and not recorded or registered in the office of the clerk of the county, at the commencement of the building. The first section of the supplement of March 14th, 1863, provides that the sale shall convey the estate of the owner in the lands and in the buildings, subject to all mortgages and other encumbrances created and recorded prior to the commencement of the building. The mortgage of the complainant and that of Trusdell, were both taken after the building was commenced. If the statutory directions as to parties to the lien claim have been observed, the result necessarily follows, that the title acquired by Horton under the lien claims, is superior to all the encumbrances which were put upon the property by the Association after the commencement of the building.

But, it is urged by the counsel of the complainant and Trusdell, that those mortgagees have had no notice of the suits upon the lien claims under which the property was sold, and by virtue of which these encumbrances are, it is claimed, wholly cut off, and they insist that those mortgagees were entitled to such notice, and could not be deprived of their liens without it. Unless they were owners within the meaning of the act, they were not entitled to notice, and their encumbrances are cut off by the sale.

The act declares who shall be parties to the suit for enforcement of the lien, and what proceedings shall be taken, and in what tribunal they shall be instituted. It is not in this court, but in a court of law—in the Circuit Court of the county; not by bill in equity, nor by action in which all parties interested in the land shall be notified, but by sum-

mons, to be directed to and served on the builder and owner of the land. Though the ,Supreme Court has passed upon the question as to who, as between the owner at the time of the commencement of the building, and the owner at the time of filing the lien, is to be regarded as the "owner" within the meaning of the law, *(Edwards* v. *Derrickson,* 4 *Dutcher* 39; *Robins* v. *Bunn,* 5 *Vroom* 322,) the question now before me does not appear by any reported case to have been passed upon, either in that court or this. In the case first cited, the late Justice Vredenburgh, in the opinion delivered by him, held, that so far as it relates to the enforcement of the lien, the proceeding under the statute is a chancery proceeding, and that, therefore, all encumbrancers whose interests are to be affected, should be made parties, and that no encumbrancer can be deprived of his interest in the land sold by virtue of the lien, unless he shall have been made a party to the suit, and duly notified, accordingly. He held that the word "owner" in the act, includes all encumbrancers, all who are interested in the property, to sell which the proceedings are taken. That the act will not bear this construction, appears to me to be clear from its language. It will appear from an examination of the act that the legislature, by the term "owner," intended to designate the person for whom, as owner of the land, the building is erected. The act provides, by its third section, for the retention by the owner or owners of any building, of the amount due and unpaid, after demand, to any journeyman or laborer who shall have done work on the building, or materialman who shall have furnished materials therefor, out of the amount owing by such owner or owners to the master workman or contractor. It is evident that by the word "owner," in this section, is meant the person for whom, as the owner of the land, the building is constructed.

By the fourth section it is enacted, that if any building be erected by a tenant, or other person than the owner of the land, then, only the building and the estate of such tenant or other person shall be subject to the lien, unless the building

be erected by the consent of the owner of the lands, in writing, to be acknowledged and recorded. It is clear that the term "owner" here, is applied to the person owning the land, as distinguished from a tenant or from a person who may be a mere possessor.

The sixth section provides that the lien claim shall contain the name of the owner or owners of the land, or of the estate therein, on which the lien is claimed, and by the seventh section it is provided that the county clerk in entering the lien, shall enter first the name of the owner of the building and land upon which the same is claimed.

The eighth provides that suit shall be commenced by summons against the "builder and owner." The ninth provides for the proceedings in the suit, and prescribes a special plea for the owner.

By the eleventh, it is enacted that under the special *fieri facias,* to be issued according to the tenth section, the sheriff or other officer shall advertise and sell and convey the building and lot in the same manner as directed by law in case of lands levied on for debt, and that the deed given by the sheriff or officer shall convey to the purchaser the building, free from any former encumbrance on the land, and shall convey the estate in the lands which the owner had at or at any time after the commencement of the building, within one year before the filing of the claim in the clerk's office, subject to all prior encumbrances, and free from all encumbrances or estates created by or obtained against such owner afterwards, and from all estates and encumbrances created by deed or mortgage made by such owner or any claiming under him, and not recorded or registered in the office of the county clerk at the commencement of the building.

The twelfth section limits the time within which the claim is to be filed and enforced, and provides for an extension of the time by a written agreement to that end, signed by the claimant and the land owner. It also provides that suit shall be brought by the claimant in thirty days, on his re-

ceiving written notice from the owner of the land or buildings, requiring him so to commence his action.

By the fourteenth section all lien claims for erecting the same building are made concurrent liens on the building and land, and are to be paid pro rata out of the proceeds of sale. It provides that the Circuit Court shall have full power to adopt such rules of practice and pleading and to make all such orders as are necessary and proper to carry into effect the objects of the act, and to secure a proper disposition of the proceeds of the sale among all persons entitled thereto *by the provisions of the act.*

The fifteenth section provides that the land owner desiring to contest the claim and free his house and land from it, may pay the amount claimed to the county clerk.

The supplement of March 9th, 1855, extends the lien to mills and manufactories and the lots whereon the same are situated, for all debts contracted by the owner or owners, or by any person with the consent of such owner or owners, in writing, for repairs of fixed machinery, gearing or other fixtures for manufacturing purposes.

By the supplement of March 16th, 1859, a lien is given, under like provisions, for repairs to all buildings; the lien, however, in such case, is not to be valid against a bona fide purchaser or mortgagee, before it is filed in the county clerk's office.

By the supplement of April 6th, 1866, it is enacted that the lien given by the original act or any of its supplements, shall and may be claimed, filed, and enforced by suit against " the builder or builders, their executors or administrators, and against the owner or owners of the building and the lot of land and curtilage, their executors or administrators."

That the act contemplates that no notice shall be given to any person, except the contractor and the land owner, as contradistinguished from an encumbrancer, seems to me to be obvious. Nowhere does it provide for notice to any encumbrancer. It not only does not recognize the right of a mortgagee or judgment creditor to be made a party to the

proceedings, but it expressly saves (§§ 11 and 66,) the rights of all encumbrancers, whose liens are prior to the commencement of the building, and in equally express terms, (§ 11,) cuts off those of all subsequent encumbrancers. There appears to have been no oversight, but direct legislation on the subject of the encumbrances. The " owner " is to be notified, and the premises are to be sold " free from all encumbrances or estates created by or obtained against the owner after the commencement of the building, and from all estates created by deed or mortgage made by such owner or any claiming under him, and not recorded or registered in the clerk's office." It seems to me clear that the legislature did not intend that encumbrancers should be notified. The person to be notified is the " owner," by or against whom encumbrances are created.

The reason why the act contains no provision for notice to encumbrancers is, probably, that it was not intended that the proceeding to enforce a lien should be a proceeding in equity, but an easy and expeditious method at law. The mechanic or materialman was not to be embarrassed by subsequent encumbrances, and as to prior ones recorded, his lien was to be subject to them. The theory of the legislature was, that a subsequent encumbrancer is a privy in estate with the owner, and besides the building is to him, notice of the possible encumbrance of the lien. He takes his encumbrance, subject to the provision of the statute in favor of the mechanic and materialman, to whom a lien paramount to his, is given by law. As was said by Chief Justice Shaw in *Howard* v. *Robinson*, 5 *Cush.* 119, 124, a case involving the question now under consideration : " If it is said that the mortgagee may be injured for want of notice, the answer is, that such notice has been given as the law requires and as the law assumes to be sufficient for practical purposes. Such subsequent mortgagee takes his title with constructive notice of the prior title by a mechanic's lien ; that lien is of a very limited duration, and he must take notice and watch the proceedings at his peril." After referring to the fact that the statute provides

for a public notice to all persons of the sale, he says : " Practically, it is scarcely credible that such a judicial proceeding can be commenced and go to its final determination in a decree for sale, without its being known to a subsequent mortgagee, ordinarily careful of his rights." The remarks of the court in *State of Iowa* v. *Eads*, 15 *Iowa* 114, are apposite also. There the subsequent mortgagee tendered to the purchaser at the lien sale, the amount of the debt, interests and costs, which were not accepted. The plaintiff on this tender, claimed the right in equity to redeem, because the state, then a mortgagee, was not made a party to the proceedings to enforce the mechanic's lien. "This assumption proceeds upon the ground that the rules and principles applicable and peculiar to the foreclosure of mortgages, equally apply to proceedings for the enforcement of mechanics' liens. The analogy does not hold good. The former is a proceeding in equity, the rules of which require that as the proceeding affects the land, all who have an interest therein, and a right to redeem from the mortgage, such as junior mortgagees, although not indispensable, should be made parties thereto, if it is desired to cut off their equity of redemption, which exists not only by the long established usages and rules of equity, but because, perhaps, of their being privies in estate. On the other hand, the enforcement of a mechanic's lien is a proceeding at law, where no equity of redemption exists, and we are not aware that it has ever been held to be necessary in such a proceeding, that encumbrancers by mortgage or other liens, (except of the same kind,) should be made parties thereto, while it will be found upon examination, that it has been held just to the reverse. *Howard* v. *Robinson*, 5 *Cush.* 119 ; *Vito Viti* v. *Dixon*, 12 *Mo.* 483 ; *Spence* v. *Etter*, 3 *Eng.* 69. A mechanic's lien, like that of an attachment, when confirmed or made effective by judgment, is binding upon the parties thereto. And the law, in order to give full effect to the principle by which the parties are held bound by it, equally concludes, by the same proceedings, all persons who are represented by the parties, and claim under them, or are

privy to them, and they are estopped from litigating that which is conclusive upon those with whom they stand thus related." *Volenti non fit injuria.* The mortgagee whose lien is taken with notice of the liability of the land to the lien created by statute, and with notice also of the provision that in the enforcement of that lien no notice will be given to him, cannot complain of a result which he had reason to anticipate and which he is presumed to have contemplated. Every man must be presumed to know the public laws in existence, and to have contracted with reference to their provisions. I am unable to adopt the view of Mr. Justice Vredenburgh, but am constrained to adopt that of Chief Justice Green, expressed in his dissenting opinion in Edwards *v.* Derrickson. He there says: "There is, in fact, no mode provided by the act in which all the parties interested can be brought before the court, as in a case in equity. The owner of the legal estate, is alone to be made a party, and the only question is whether, in contemplation of the statute, it is the owner upon whose estate the lien attaches, or the owner to whom the legal title is subsequently transferred." Justice Vredenburgh places his construction of the statute on the principles of constitutional law also, holding that those principles forbid that in such a case, a man's interest shall be affected, unless he shall have been notified of the proceeding by which it is sought to affect it. But I see no violation of any principle of constitutional law or of natural justice, in the provision which disregards the claims of a mortgagee who is notified by statute, before he takes his mortgage, that if he shall do so, his claim will be disregarded and will be liable to be defeated by a sale under a prior encumbrance, of a peculiar and specified character, without notice to him. Our recording acts are not in violation of any constitutional principle or any principle of natural justice, although by virtue of their provisions, a lien may be defeated and an estate lost, merely by failure to give notice of them to subsequent encumbrancers or grantees ignorant of their existence. To the suggestion that the act in question operates hardly on subsequent encumbrancers in some cases,

the language of Chancellor Zabriskie in *Mechanics' Mutual Loan Association* v. *Albertson*, 8 C. E. Green 318, is pertinent : " This act was not intended for the protection of mortgagees or purchasers, as a part of the system of the registry law, so long part of the state policy, but in utter disregard of it, makes lands liable for debts which need not be registered for a year after contracted, without any possibility of a purchaser or mortgagee finding out with certainty, whether there are such claims. The mechanics and materialmen could not be efficiently protected without some risk to the mortgagee and the purchaser, and the legislature, when one must suffer, have chosen to protect the former at the expense of the capitalist. A wiser and more just law than the mechanics' lien law can be imagined, even if its enactment could not be procured. But it is the duty of the court to administer the law as it exists, and to construe it as its intention is shown by its provisions." This law has stood on the statute book for over twenty years, and the practice under it has generally been in accordance with the views I have expressed. In some cases cautious practitioners have, in view of the fact, that the subject has not, in this phase of it, passed under the examination of our courts, made the encumbrancers, judgment creditors and mortgagees, parties, but this has not been the general practice, for the reason that the construction put on the act by the bar, has been that the owner for whom the building was erected, alone was intended by the word " owner " in the act, and that it was necessary to notify such owner alone. As an exposition of the meaning of the act, this practice has great significance. Very many land *titles* rest upon such proceedings so instituted and conducted, and necessarily, therefore, depend for their protection against encumbrances created after the commencement of the building, upon the construction of the act. Although, for more than twenty years, the construction which I put upon the act has been acted upon, and as a consequence, encumbrances have been defeated, without notice to the holders of them, the question has never, as far as our books of reports show, been raised by such en-

cumbrancers, and the legislature have not seen fit to amend the law in this particular, or even to declare more explicitly their intention on the point under consideration.

The conclusion at which I have arrived in regard to the title under the lien claims, that it is paramount to all encumbrances put on the property after the commencement of the building, renders it unnecessary to consider the remaining questions.

The bill will be dismissed.